**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MONICA GARCIA, as Personal
Representative of the Estate of
Robert Garcia, deceased,

                    Plaintiff,

v.                                                      Case No. 3:12-cv-1369-J-34PDB

UNITED STATES OF AMERICA,

                    Defendant.
_____/

# O R D E R

   **THIS CAUSE** is before the Court on Plaintiff's Motion for Reconsideration and to Alter or Amend Judgment and Incorporated Memorandum of Law (Doc. 70; "Motion"), filed on December 4, 2015. Plaintiff, Monica Garcia, seeks reconsideration of the Court's Order (Doc. 66; "Summary Judgment Order"), dated November 5, 2015, granting Defendant's Motion for Summary Judgment and Suppor[t]ing Memorandum of Law (Doc. 48). On February 5, 2016, Defendant, the United States of America, filed Defendant's Response in Opposition to Plaintiff's Motion for Reconsideration (Doc. 76; "Response"). With leave of Court, Mrs. Garcia filed Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Reconsideration (Doc. 79; "Reply") on February 19, 2016. Accordingly, this matter is ripe for review.

   A motion to alter or amend a judgment may be filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (Rule(s)). Rule 59(e) affords the Court discretion to reconsider an order which it has entered. See Mincey v. Head, 206 F.3d 1106, 1137 (11th Cir. 2000); O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992). "The only grounds

-1-

for granting a Rule 59 motion are newly[ ]discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (quotations and citations omitted). This Court has interpreted those parameters to include "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." Lamar Advertising of Mobile, Inc. v. City of Lakeland, Fla., 189 F.R.D. 480, 489 (M.D. Fla. 1999). For example, reconsideration may be appropriate where "the Court has patently misunderstood a party." O'Neill v. The Home Depot U.S.A., Inc., 243 F.R.D. 469, 483 (S.D. Fla. 2006).

The purpose of Rule 59 is not to ask the Court to reexamine an unfavorable ruling in the absence of a manifest error of law or fact. Jacobs v. Tempur-Pedic Int'l., Inc., 626 F.3d 1327, 1344 (11th Cir. 2010). As such, Rule 59(e) cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005). Additionally, motions to alter or amend "should not be used to raise arguments which could, and should, have been made before the judgment was issued." O'Neal, 958 F.2d at 1047 (quotations and citations omitted). Indeed, permitting a party to raise new arguments on a motion for reconsideration "essentially affords a litigant 'two bites of the apple.'" Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985); see also Mincey, 206 F.3d at 1137 n.69 (citation omitted); Mays v. United States Postal Service, 122 F.3d 43, 46 (11th Cir. 1997) ("[A] motion to reconsider should not be used by the parties to set forth new theories of law"). Accordingly, the Eleventh Circuit Court of Appeals has held that the "[d]enial of a motion for reconsideration is especially sound when the party has failed to articulate any reason for the failure to raise

the issue at an earlier stage of the litigation." <u>Sanderlin v. Seminole Tribe of Fla.</u>, 243 F.3d 1282, 1292 (11th Cir. 2001) (internal quotations and citation omitted). Moreover, "[w]hen evaluating a motion for reconsideration, a court should proceed cautiously, realizing that in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly." <u>United States v. Bailey</u>, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003) (citation and quotation omitted).

Of the limited grounds for relief under Rule 59(e), Mrs. Garcia contends that the Court should grant her Motion to correct manifest errors of fact and law. She specifically focuses on the Court's findings with respect to (1) Maj. Scott Schafer, (2) the "sleep lab personnel," consisting of Nancy Johnston, Sayuri Jackson, and Sgts. Ivan Dyson and K. Hess; and (3) Dr. Eric Ashman. Motion at 3–15. She further contends that her experts were competent to testify as to the standards of care applicable to all relevant employees and that, regardless, no expert opinion is necessary in this case to establish the negligence of Dr. Ashman or the sleep lab personnel because their alleged negligence is "obvious to lay people." <u>Id.</u> at 15–17. The United States responds that Mrs. Garcia either attempts to reargue the same issues without identifying any manifest error or presents new evidence and arguments. Response at 3–15.

Mrs. Garcia argues that the Court erred in concluding that there was insufficient evidence to create a genuine dispute as to whether Maj. Schafer would have ordered the CPAP machine if he had received Dr. Daron Scherr's report sooner.[1] Motion at 4. To the

---

[1] Citing <u>P.G. v. State, Dep't of Health & Human Servs.</u>, 4 P.3d 326, 334 (Alaska 2000), Mrs. Garcia contends generally that the Court committed manifest error in finding insufficient evidence as to causation because "[a]n action will only be deemed, as a matter of law, not to be the proximate cause of harm if <u>looking back</u> from the harm to the actor's negligent conduct, it appears to the court <u>highly extraordinary</u> that it should have brought about the harm." Motion at 13 (emphasis in Motion). But Mrs. Garcia fails to acknowledge that the absence of evidence that any employee would have acted differently (or would have been obligated to act differently) even following the standards of care the experts described removes a

extent Mrs. Garcia attempts to reargue the issue of whether Maj. Schafer would have ordered the CPAP machine, the Court thoroughly considered his testimony and concluded that he testified only that he would have facilitated obtaining the equipment for Mr. Garcia <u>after</u> Mr. Garcia had followed up with a physician at the sleep clinic. <u>See</u> Summary Judgment Order at 14–16. Mrs. Garcia may not "relitigate old matters" through her Motion. <u>See</u> <u>Michael Linet, Inc.</u>, 408 F.3d at 763. None of the testimony she cites demonstrates a manifest error.

Mrs. Garcia also takes issue with the Court's discussion of testimony from Dr. Shelley Hershner—one of the United States' experts—that she did not believe Maj. Schafer had the background to order CPAP equipment. Motion at 4 n.1; <u>see</u> Summary Judgment Order at 15 (citing Doc. 52-3 at 15). Mrs. Garcia contends that the Court "improperly weighed the evidence" by crediting Dr. Hershner's opinion over Maj. Schafer's own testimony and the opinion of Dr. R. Whit Curry, the United States' proffered expert on family medicine. Motion at 4 n.1. Mrs. Garcia misunderstands the Court's discussion of Dr. Hershner's testimony. The Court did not rely on that testimony to decide whether Maj. Schafer <u>could have</u> prescribed or ordered a CPAP machine. Indeed, just before discussing Dr. Hershner's testimony, the Court discussed Maj. Schafer's own testimony that he could have done so. <u>See</u> Summary Judgment Order at 14–15. Rather, the Court referenced Dr. Hershner's testimony as further indication that there was insufficient

---

necessary logical step from the alleged negligent conduct to the ultimate harm. Put simply, because there was insufficient evidence to create a genuine dispute that any of the alleged negligent acts actually affected the timing of Mr. Garcia's treatment, as a matter of law, those acts could not be the proximate cause of Mr. Garcia's death to the extent his death was caused by the delay in treatment, as Mrs. Garcia's experts opined.

evidence to create a genuine dispute as to whether Maj. Schafer <u>would have</u> ordered the CPAP machine. As such, the Court did not improperly weigh the evidence.

Mrs. Garcia argues that the Court erred in concluding that there was no evidence that Maj. Schafer could have sped up the timing of Mr. Garcia's sleep study. Motion at 5. She points to Maj. Schafer's testimony that, in certain circumstances, he could arrange for immediate or prompt appointments with specialists. <u>Id.</u> (citing Schafer Depo. at 50–51). However, this is a new argument that Mrs. Garcia could have raised earlier, and she relies on previously available testimony that she had not brought to the Court's attention during extensive briefing on summary judgment. Following Mrs. Garcia's contention in her response to the motion for summary judgment that Maj. Schafer "failed to follow up to ensure that Robert Garcia timely obtained the sleep study" and that his failure "contributed to the fatal delay," <u>see</u> Doc. 52 at 6, the United States asserted that it was undisputed "that there was no need to request an 'urgent' or 'STAT' sleep study, … and there is no evidence that Maj. Schafer had any control over the scheduling of the study," <u>see</u> Doc. 56 at 2. Despite having an opportunity to argue, as she does now, that Maj. Schafer had testified that he could affect scheduling, she failed to do so. <u>See generally</u> Doc. 61. As such, that argument is not appropriate at this stage of the proceedings. <u>See</u> <u>Michael Linet, Inc.</u>, 408 F.3d at 763; <u>O'Neal</u>, 958 F.2d at 1047.

Mrs. Garcia also contends that the Court erred in determining that the failure to provide Dr. Scherr's report to Mr. Garcia was not attributable to Maj. Schafer and that any such failure was not the proximate cause of Mr. Garcia's death. Motion at 5–6. However, to support this contention, Mrs. Garcia relies on her earlier argument that the Court erred in determining that there was insufficient evidence to create a genuine dispute as to

whether Maj. Schafer would have ordered a CPAP machine. See id. ("Had Mr. Garcia known he was diagnosed with severe obstructive sleep apnea, he could have asked Maj. Schafer to prescribe him a CPAP machine—precisely as Maj. Schafer testified he would have done."). Because the Court has declined to reconsider its finding on that issue, see supra at 3–4, the Court need not reconsider whether the failure to provide the report to Mr. Garcia proximately caused his death.

Mrs. Garcia argues that the Court erroneously faulted her for failing to establish who among the identified sleep lab personnel—Johnston, Jackson, Sgt. Dyson, and Sgt. Hess—was responsible for forwarding Dr. Scherr's report to Maj. Schafer and Dr. Ashman. Motion at 7. The Court did observe in a footnote that Mrs. Garcia had pointed to no evidence supporting her general statement that "all" of the individuals she identified in her response to the motion for summary judgment were employees of the United States during the relevant time frame. See Summary Judgment Order at 20 n.23. To the extent the Court had lingering doubts about the employment status of those four people, Mrs. Garcia has resolved them. See Motion at 10–12; Reply at 2–3. However, the Court did not base its decision on Mrs. Garcia's failure to provide evidence of who among those four employees was responsible for ensuring that the report was sent to Maj. Schafer; rather, the Court concluded that Mrs. Garcia had failed to point to evidence suggesting that any of those four employees had that duty (as opposed to some other unidentified individual), and, as such, there was insufficient evidence to establish that whoever had that duty—if anyone—was a government employee.

Mrs. Garcia now contends for the first time that, to the extent the duty to forward Dr. Scherr's report to Maj. Schafer remained unassigned, Sgt. Dyson and/or Sgt. Hess

were negligent in their supervisory roles by failing to delegate that task to some employee. See Motion at 9. She did not argue in any of her briefs on summary judgment that Sgts. Dyson or Hess were negligent in a supervisory capacity. Instead, she argued that they personally failed to forward the report to Maj. Schafer. See Doc. 52 at 7–8. Her failure to raise that argument earlier would be a sufficient ground for the Court to reject it now. See See Sanderlin, 243 F.3d at 1292; O'Neal, 958 F.2d at 1047. Regardless, Mrs. Garcia argues only that, had the sleep lab personnel timely forwarded Dr. Scherr's report to Maj. Schafer, Maj. Schafer would have ordered a CPAP machine for Mr. Garcia sooner. See Motion at 12. Because, as previously discussed, the Court has declined to reconsider its conclusion that there was no genuine dispute as to whether Maj. Schafer would have done so, reconsideration of the Court's findings as to the negligence of the sleep lab personnel based on failure to forward the report to Maj. Schafer would not affect the Court's ultimate decision in this case.

Mrs. Garcia also asserts that one of the four identified sleep lab personnel failed to forward Dr. Scherr's report to Dr. Ashman and that that failure also proximately caused Mr. Garcia's death. As the Court observed in its Summary Judgment Order, Mrs. Garcia raised that contention for the first time in her surreply to the United States' motion for summary judgment. See Summary Judgment Order at 20 n.24. Even the mentions in the surreply were cursory at best. See Doc. 51 at 3 n.3, 4. The Court gave equally cursory attention to that argument. To the extent Mrs. Garcia now attempts to more fully develop that argument, her efforts are not well-taken. For the first time, Mrs. Garcia provides and relies on an additional "policy"—the Sleep Lab Continuity Protocol, see Doc. 70-1 at 6–11—as the foundation for the responsibility of one or more sleep lab employees to forward

the report to Dr. Ashman. <u>See</u> Motion at 7–9. The Eleventh Circuit Court of Appeals has cautioned that a court should not grant a motion to reconsider based on newly provided evidence unless that evidence was not available earlier. <u>See</u> <u>Mays</u>, 122 F.3d at 46 ("[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the [case]."). Because Mrs. Garcia had never before offered any evidence showing that one of the sleep lab personnel had the responsibility to forward Dr. Scherr's report to Dr. Ashman, the Court will not reconsider its decision based on this new evidence. Moreover, to the extent Mrs. Garcia raises new arguments based on newly cited testimony from Dr. Ashman, those arguments are not appropriate at this stage. <u>See</u> <u>O'Neal</u>, 958 F.2d at 1047. If the Court were to entertain Mrs. Garcia's more developed arguments on reconsideration solely because she had mentioned them in passing, without elaboration, during earlier proceedings, it would "essentially afford[ ] [her] 'two bites of the apple.'" <u>Am. Home Assurance</u>, 763 F.2d at 1239.

Mrs. Garcia's final argument as to the sleep lab personnel is that Jackson breached the standard of care in failing to schedule Mr. Garcia for an earlier sleep study and follow-up appointment. Motion at 13–14. However, this is also a new argument. At no point did Mrs. Garcia contend that the failure to schedule an earlier sleep study and follow-up appointment was attributable to the administrative employee responsible for scheduling.[2] <u>See</u> <u>generally</u> Docs. 52, 61. In other words, she did not previously argue that

---

[2] Mrs. Garcia acknowledges that the Court did not address the sleep lab personnel's potential negligence in "fail[ing] to timely schedule Mr. Garcia for his sleep study." Motion at 13. She then cites her response to the summary judgment motion at page 2, implying that she had made this argument but that the Court simply failed to consider it. <u>See</u> <u>id.</u> However, the only possible statement to which she refers is

the employee responsible for scheduling was negligent in any way aside from possibly failing to forward Dr. Scherr's report to Maj. Schafer and Dr. Ashman. Because she presents this new theory for the first time, the Court will not consider it. See O'Neal, 958 F.2d at 1047.

As to Dr. Ashman, Mrs. Garcia argues only that he was negligent in supervising the Sleep Clinic to the extent he allowed sleep lab personnel to violate established policies. Motion at 14–15. Mrs. Garcia simply reargues the Court's decision on this issue. She previously asserted that the sleep lab personnel's negligence was imputable to Dr. Ashman, see Doc. 52 at 8, and the Court rejected that argument because no expert had opined that Dr. Ashman negligently supervised the Sleep Clinic, see Summary Judgment Order at 20–21. As such, she has failed to identify any manifest error warranting reconsideration of the Court's Order with respect to Dr. Ashman.

Finally, Mrs. Garcia contends for the first time that she does not need an expert opinion to establish a breach of the standard of care by Dr. Ashman or Johnston in this case because "the violations attributable to Dr. Ashman and Ms. Johnston were not

---

her assertion in the section titled "Undisputed Facts" that "[t]he delay in obtaining the sleep study, according to Plaintiff's expert, constituted a violation of the applicable standard of care." See Doc. 52 at 2. That statement insufficiently raised the issue Mrs. Garcia raises now, particularly because she immediately followed that statement with an assertion that "[t]he delay was, in part, attributable to Major Schafer failing to do any follow up." Id. at 2–3. The Court reiterates that the only argument Mrs. Garcia made in the section of her response devoted to the sleep lab personnel was their failure to forward Dr. Scherr's report to Maj. Schafer. See id. at 7–8.

As to her argument that "[t]he Sleep Lab also failed to timely schedule Mr. Garcia for a follow-up appointment," Mrs. Garcia points to no prior argument in her summary judgment briefing, but instead cites the Court's Summary Judgment Order at page 21. See Motion at 13. However, the Court made no such finding on that—or any other—page of its Order. At most, the Court indicated that Mrs. Garcia's experts opined that "the delay in providing Mr. Garcia with a follow-up appointment at the Sleep Lab violated the standard of care." See Summary Judgment Order at 21. Again, though, there was never any suggestion that such delay was the result of Jackson's negligence in scheduling the appointment.

medical negligence, but a failure to follow and implement administrative protocols."[3] Motion at 16. She cites D.P. v. Wrangell Gen. Hosp., 5 P.3d 225, 228 (Alaska 2000), for the proposition that "expert testimony is not needed in non-technical situations where negligence is evident to lay people." Motion at 16. But Mrs. Garcia had not previously contended that this case is one of "ordinary negligence" as opposed to professional negligence. The Court will not consider that argument raised for the first time in her Motion. See Sanderlin, 243 F.3d at 1292; O'Neal, 958 F.2d at 1047.

### Conclusion

In her Motion, Mrs. Garcia raises new arguments previously available to her and relitigates old ones. She has not identified any manifest error warranting reconsideration of the Court's Summary Judgment Order. The outcome of this case is indeed difficult for Mrs. Garcia, and the Court is sympathetic to her enormous loss. However, the Court cannot allow sympathy to guide its decision on matters of law. Accordingly, it is hereby

**ORDERED:**

Plaintiff's Motion for Reconsideration and to Alter or Amend Judgment and Incorporated Memorandum of law (Doc. 70) is **DENIED.**

**DONE AND ORDERED** in Jacksonville, Florida, on May 13, 2016.

MARCIA MORALES HOWARD
United States District Judge

lc21
Copies to counsel of record

---

[3] Mrs. Garcia also reiterates her argument that her experts are competent to opine on the applicable standards of care. Motion at 15–16. The Court need not address that issue because it did not address it in its order on summary judgment. See Summary Judgment Order at 9–10.